UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KAREN DORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:15-cv-311-WTL-MJD |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Karen Dorris requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Dorris filed an application for disability insurance benefits ("DIB") on May 11, 2012, alleging onset of disability on May 28, 2009. The Social Security Administration initially denied Dorris's application on August 2, 2012. After Dorris timely requested reconsideration, the Social Security Administration again denied her claim on October 15, 2012. Thereafter, Dorris requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a video hearing in which Dorris and Clifford Brady, a vocational expert, testified on January 17, 2014. The ALJ issued his hearing decision denying Dorris's DIB application on April 4, 2014. After the Appeals Council denied Dorris's request for review, Dorris filed this action seeking judicial review.

## II. **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

### III. THE ALJ'S DECISION

The ALJ found at step one that Dorris had not engaged in substantial gainful activity since May 28, 2009, the alleged disability onset date. At step two, the ALJ determined that Dorris had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; status post cervical and lumbar fusion; osteoarthritis in the bilateral knees; status post left knee replacement; carpal tunnel syndrome; and hypertension. The ALJ found at step three that these impairments did not, individually or in combination, meet the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> [C]laimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. Claimant can frequently, but not constantly, reach overhead, handle and finger bilaterally, she can occasionally climb ramps and stairs, she can occasionally balance, stoop, kneel and crouch, but she can never climb ladders, ropes or scaffolds, she can never crawl, and she should avoid concentrated exposure to extremes of heat and cold, as well as wet, slippery surfaces, and she should avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights.

Record at 21. On the basis of this RFC determination, the ALJ concluded at step four that Dorris was unable to perform any of her past relevant work, but at step five, the ALJ found that, considering her age, education, work experience, and RFC, Dorris could perform certain unskilled jobs, such as production assembler, bench assembler, and small products assembler, that exist in significant numbers in the national and regional economies. Accordingly, the ALJ concluded that Dorris was not disabled.

## IV. **DISCUSSION**

The details of Dorris's medical history are set forth quite thoroughly in the parties' briefs and the ALJ's decision and need not be repeated here. Facts directly relevant to the Court's analysis are discussed in context below.

### A. Weight Accorded the Treating Physician's Medical Opinion

Dr. Kissel, Dorris's treating physician, submitted two medical opinions in support of Dorris's application for DIB. First, on June 7, 2012, Dr. Kissel completed a form entitled Medical Assessment of Ability to Do Work-Related Activities (Physical). Dr. Kissel indicated that Dorris has a number of work-related exertional limitations: she can frequently lift no more than 10 pounds; stand or walk no more than two hours in an eight-hour workday because "15 [minutes] of standing results in pain"; sit for no more than six hours in an eight-hour workday; alternate between sitting and standing frequently; limit pushing and pulling activities on account of "pain and fatigue in extremities"; avoid crouching or crawling because of her "dizziness from neck movement and chronic knee soreness"; avoid "extreme cold or heat and humidity"; and miss more than four days per month as a result of her impairments and treatment. Record at 258-61. Second, on June 21, 2012, Dr. Kissel wrote a letter summarizing his findings regarding Dorris's capacity for work:

4

> Because of progressive pain and muscle soreness, you [Dorris] are unable to do work related physical activities such as standing, walking, lifting, carrying and prolonged traveling. Use and dependence on pain medication and muscle relaxers to manage activities of daily living have affected your understanding, memory, concentration and social adaptation.

*Id.* at 463. On this basis, Dr. Kissel concluded that Dorris is not suited for "gainful employment." *Id.*

"[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citations omitted). "We give more weight to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. An ALJ must offer good reasons for discounting the opinion of a treating physician." *Id.* (citations omitted).

In this case, the ALJ rejected Dr. Kissel's opinion regarding the severity of Dorris's impairments because he found that the medical evidence did not support them:

> For example, at the claimant's initial consultative medical examination in June 2012, Ami Rice, M.D. observed that the claimant had reduced range of motion in the cervical and lumbar spine and a positive straight leg raise test. However, Dr. Rice also noted that the claimant's posture and gait were both normal, the claimant had full range of motion in the upper and lower extremities, the claimant was able to walk on her heels and toes, squat, tandem walk, and the claimant's motor strength, grip and manual dexterity were all within normal limits. At a subsequent consultative medical examination in September 2012, just prior to the claimant's knee surgery, John Heflin, M.D. observed that the claimant walked with a very slow and limiting gait. However, Dr. Heflin also noted that the claimant was able to dress and undress without difficulty, the claimant had normal motor strength and neurological functioning, and he also observed that the claimant's grip strength was 5/5 bilaterally with good fine and gross manipulative skills.

> Based on the above, the State agency physicians, M. Ruiz, M.D. and Steven Roush, M.D., both determined that the claimant was capable of the equivalent of "light" exertional work activities. The undersigned agrees, as reflected herein. Like Dr. Rice, the claimant's own treating health care providers, including Dr. Kissel, documented tenderness in the claimant's spine, but they did not document clinical findings on exam suggestive of a significant deficit in motor or

5

> neurological functioning, nor did the objective medical findings show evidence of a significant pathology in the claimant's neck, back, or hands.

Record at 23. While generally an ALJ may properly discount a treating physician's opinion if it is inconsistent with a consulting physician's opinion, s*ee Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), in this case it is not at all clear that any of the consultative examiners' findings cited by the ALJ are, in fact, inconsistent with Dr. Kissel's opinion. Is having a normal gait and grip strength or being able to dress oneself inconsistent with being unable to work full-time due to back and neck pain? Is the absence of a "significant deficit in motor or neurological functioning"? In fact, both consulting physicians found abnormalities relating to her back when they examined Dorris; Dr. Rice opined that she suffered from "OA [osteoarthritis]/DDD [degenerative disc disease]/spinal stenosis/muscle spasms" and noted limited range of motion in her cervical and lumbar spine, tenderness in the L4-5 region and positive straight-leg testing; Dr. Heflin noted limited range of motion in the cervical and lumbar spine, positive straight-leg raising testing, and positive radicular symptoms down both of her legs. Other than Dr. Heflin's opinion that she could bend occasionally, neither consulting physician opined on her functional limitations.

The ALJ adopted the findings of the non-examining state agency physicians rather than that of the treating physician, noting that Dr. Kissel and examining consultant Dr. Rice "documented tenderness in the claimant's spine, but they did not document clinical findings on exam suggestive of a significant deficit in motor or neurological functioning, nor did the objective medical findings show evidence of significant pathology in the claimant's neck, back or hands." Record at 23. As support for that finding, the ALJ cited to Exhibits 6F, 7F, 19F, 20F, and 23F. Exhibit 7F consists of treatment records from the Indiana Spine Group relating to a June 25, 2012, visit. Presumably the ALJ's citation refers to Dr. Sasso's note regarding a May

6

2012 *x-ray* on which no abnormalities were found. However, in the visit notes the doctor noted "symptoms that are very concerning for upper motor lesions *including some physical exam findings,* as well as symptoms that are concerning for cervical myelopathy," which led him to refer Dorris for an MRI. *Id.* at 351 (emphasis added). Clearly treating physician Dr. Sasso believed that the normal x-ray was not sufficient to discount Dorris's reported symptoms. It is unclear why the ALJ cites to Exhibit 19F, as it consists of records from Dorris's knee replacement surgery, which are irrelevant to her back and neck problems. The remaining cited exhibits, Exhibits 6F, 20F, and 23F, consist of four years of records from Dr. Kissel; the ALJ does not indicate what objective medical findings he expected to find there that were lacking.

There is objective evidence, however, that seems to be consistent with Dr. Kissel's opinion. That's the most the Court can say—seems to be consistent—because only someone with medical expertise could say more. According to Dr. Macadaeg, Dorris's treating nonoperative spine specialist, her July 2012 cervical MRI shows "mild kyphotic angulation" at C5-6, "some junctional spondylosis at both C4-5 and C6-7 with slight anterolisthesis at the C4-5 level with mild neural foraminal narrowing on the right" and "[d]egenerative disc disease, severe" at C6-7. *Id.* at 386. He recommended that she undergo a cervical epidural steroid injection. The state agency physicians do not mention this MRI or any of these findings; accordingly, there is no medical opinion in the record explaining how—or even expressly opining that—these findings do not constitute evidence that supports Dr. Kissel's opinion.

It is true that a note from a July 2012 visit states that "Dr. Sasso does not appreciate any significant pathology present on her MRI scan," *id.* at 370, which was incorrectly referred to by state agency Dr. Ruiz as "7/2012 office visit showed no pathology present" and, in turn, relied upon by the ALJ. However, if that comment was meant literally, as Dr. Ruiz and the ALJ appear

to take it, it cannot be reconciled with the MRI reports themselves or with Dr. Macadaeg's interpretation of them as showing, among other things, junctional spondylosis and severe degenerative disc disease. Perhaps when Dr. Sasso referred to "significant pathology" he was referring only to cervical myelopathy, which he had previously thought Dorris might have; perhaps, as a surgeon, he was referring to conditions that required surgical intervention; or, perhaps, he did mean that in his opinion the MRI results showed nothing that could explain Dorris's pain. In any event, it was error for the ALJ to rely solely on the non-examining physicians' opinions, which do not even acknowledge the MRI results and which were reached without the benefit of Dr. Macadaeg's evaluation, which occurred later, as evidence that Dr. Kissel's opinion is inconsistent with the medical evidence of record.

On remand, the ALJ shall reevaluate the relative weight to be given to the medical opinions of record, taking care to consider the information available to the physician as well as "(1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *See Brown v. Colvin*, ___ F.3d ___, 2016 WL 7404758, at *3 (7th Cir. Dec. 22, 2016) (citing *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)); 20 C.F.R. § 404.1527(c)).

### B. Credibility Determination

Dorris testified that she is unable to sustain full-time work, primarily due to pain in her back and left leg. Under the standard that was applicable at the time of the ALJ's decision, with regard to subjective symptoms such as pain, if a claimant had a medically determinable

8

impairment that is reasonably expected to produce pain, then the ALJ was required to evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p,[1] and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). "The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). In addition, "[a]lthough an ALJ's credibility determinations are generally entitled to deference, this Court has 'greater freedom to review credibility determinations based upon objective factors or fundamental implausibilities, rather than subjective considerations' such as the claimant's demeanor." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (quoting *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 354 (7th Cir. 2005)).

In this case, the ALJ determined that Dorris's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[1] S.S.R. 96-7p recently has been superseded by S.S.R. 16-3p, which the agency explained "eliminate[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

credible for the reasons explained in this decision." Record at 24. The reasons given by the ALJ for discounting Dorris's testimony about her symptoms are not adequate, however.

First, the ALJ stated the following: "According to the claimant, she obtained little relief from a prior cervical fusion in 2005 and a lumbar fusion in 1988, which is contradicted by the treatment notes of the claimant's primary care providers." *Id.* at 22. While the ALJ does, in fact, cite to numerous medical records which indicate that Dorris's prior surgeries provided her with relief from her symptoms for quite some time, he does not cite to anywhere in which Dorris suggested otherwise, and the Court's review of the record has not uncovered any such testimony or report. Rather, the record seems to consistently indicate that Dorris's surgeries were successful and she was able to resume doing fairly heavy physical work for many years before she began experiencing the symptoms that she now alleges have worsened to the point of being disabling.

Next, the ALJ notes that Dorris's knee surgeon recommended that she "exercise" in January and May 2013 and that Dorris testified that she "exercises on a daily basis, and that her exercise program includes riding a stationary bicycle 15-30 minutes every day and performing squats." *Id.* at 24. The record indicates that Dorris underwent knee replacement surgery in November 2012 and completed a course of physical therapy as part of her recovery from that surgery. Once her formal physical therapy ended, she continued exercises at home. The fact that she was compliant with her surgeon's instructions regarding exercise following knee surgery is hardly a reason to discredit her. Nor is the modest "exercise program" she describes inconsistent with her allegation of disabling pain. *Cf. Carradine v. Barnhart*, 360 F.3d 751, 755 ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent

with her suffering severe pain."). Neither do the types of daily activities the ALJ points to suggest that she is exaggerating her symptoms; the Seventh Circuit has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015).

Finally, the ALJ pointed to "the lack of objective medical findings [and] the lack of significant clinical findings on exam." Record at 24. As discussed in the previous section, however, there are objective and clinical findings on the record that appear to support Dorris's claims, and, in any event, "her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence." *Id.* (citations omitted).

On remand, the ALJ shall reevaluate his assessment of Dorris's subjective symptoms, considering the record as a whole and conducting the analysis required by S.S.R. 16-3p. This should include his evaluation of whether Dorris is capable of frequently performing handling, fingering, and reaching, in light of her testimony and the medical evidence of record regarding that issue, including Dr. Kissel's opinion.

## V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 1/25/17

*/s/ William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication